IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JAMIE MCCANN, *et al.*,
     Plaintiffs,

     v.                                  Consolidated Civil Action No. 3:21cv69 (DJN)

MICHAEL EVERETTE, *et al.*,
     Defendants.

**MEMORANDUM OPINION**
**(Addressing Motions to Dismiss)**

Plaintiffs Jamie McCann ("McCann") and Samuel A. Buttari, Sr., ("Buttari") (collectively, "Plaintiffs") bring this consolidated civil action on behalf of McCann and the Estate of Ryan Dylan Buttari against Defendants Michael Everette ("Everette") and M and C Transfer, LLC ("M&C") (collectively, the "Carrier Defendants") and 88 Freight, LLC ("88 Freight"), alleging that Everette negligently caused a motor vehicle accident that resulted in personal injuries to McCann as well as the death of her six-year-old son, Ryan Buttari ("Ryan"). This matter now comes before the Court on the Motions to Dismiss filed by the Carrier Defendants (ECF No. 15) and 88 Freight (ECF No. 20). For the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART the Carrier Defendants' Motion (ECF No. 15) and GRANTS IN PART and DENIES IN PART 88 Freight's Motion (ECF No. 20). The Court grants the Motions to the extent that they seek dismissal of any claims for willful and wanton negligence, but denies 88 Freight's Motion to the extent that it seeks 88 Freight's dismissal from this lawsuit. Additionally, the Court denies the Motions to the extent that they seek dismissal of claims for gross negligence. Accordingly, the Court hereby DISMISSES

WITHOUT PREJUDICE Count II of Plaintiffs' Amended Complaint (ECF No. 9) to the extent

that it states a claim for willful and wanton negligence.

## I.     BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's

legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  With this principle in mind, the

Court accepts the following facts.

### A.     Factual Background

On the morning of September 26, 2020, McCann and Ryan were passengers in a pick-up

truck traveling north on Interstate 95.[1]  (Amended Complaint ("Am. Compl.") (ECF No. 9) at 1,

¶ 1.)  Likewise, Everette, "as an agent and employee" of both M&C and 88 Freight, operated a

tractor trailer as he traveled on the same road and in the same direction as McCann and Ryan.

(Am. Compl. at 2, ¶¶ 2, 3.)  Ultimately, Everette struck the rear of the pick-up truck that McCann

and Ryan occupied.  (Am. Compl. at 3, ¶ 11.)  As a result, McCann sustained serious injuries and

six-year-old Ryan lost his life.  (Am. Compl. at 3-4, ¶ 11-12.)  Plaintiffs allege that at two

locations before the crash site — at 10 miles and 4-5 miles, respectively — digital overhead

signs warned motorists of an earlier crash that had produced stopped traffic and blocked lanes.

(Am. Compl. at 4, ¶¶ 3,4.)  Nonetheless, Everette "ignore[ed] the two digital overhead signs,

---

[1]     On March 23, 2021, the Court entered an Order (ECF No. 29) consolidating this action
(the "Personal Injury Action") with *Samuel A. Buttari, Sr., et al. v. Michael Everette, et al.*,
3:21cv70 (DJN) (the "Wrongful Death Action").  The Amended Complaint in each action alleges
substantially the same facts.  Accordingly, although the Court lightly relies on the Amended
Complaint for the Wrongful Death Action in supplying some of the factual background, citations
here refer only to the Amended Complaint (ECF No. 9) for the Personal Injury Action.

fail[ed] to decrease his speed" and "crashed [at full speed] into seven vehicles which were stopped or slowing for traffic." (Am. Compl. at 5, ¶ 6.)

Two days before the crash, an employee of 88 Freight asked Everette to complete a "New Carrier setup" to haul freight for or on behalf of 88 Freight. (Am. Compl. at 2, ¶ 4.) Everette and the employee communicated via e-mail, with the employee using an 88 Freight e-mail address that sported a signature line reading "88 Freight, LLC." (Am. Compl. at 2, ¶ 5.) On September 25, 2020, the employee "instructed and dispatched" Everette to haul the load that Everette was transporting at the time that he struck McCann and Ryan's vehicle. (Am. Compl. at 3, ¶¶ 7-9.) Additionally, Plaintiff avers that 88 Freight "controlled the means and methods" of hauling the load by: (1) requiring Everette to use specific chains and binders to secure the load; (2) taking photographs of the load and sending them to an 88 Freight e-mail address or phone number before commencing the trip; and, (3) reserving the right to fine and/or withhold payment from Everette if he either failed to properly stack or secure the load, or if he delivered the load late. (Am. Compl. at 3, ¶ 10.)

### B.    Plaintiffs' Complaints

On January 14, 2021, Plaintiffs filed complaints for personal injury and wrongful death in the Circuit Court for the City of Petersburg. (Notice of Removal (ECF No. 1) at 1.) On February 10, 2021, Defendants removed both complaints to this Court and, on the following day, Plaintiffs filed Amended Complaints in each action (ECF No. 9). On March 23, 2021, the Court entered an Order (ECF No. 29) consolidating the Personal Injury Action and the Wrongful Death Action.

As for the Amended Complaint in the Personal Injury Action, McCann brings a claim for simple negligence in Count I, alleging that Everette "under the scope of employment" with M&C

3

and 88 Freight, struck the rear of her vehicle and thereby caused her serious injuries.  From these allegations, McCann seeks ten million dollars ($10,000,000) in compensatory damages.  In Count II, McCann brings a claim for willful and wanton and/or gross negligence.  In support of that claim, McCann alleges that Everette ignored two digital overhead signs and crashed into McCann's vehicle at full speed.  For Count II, McCann seeks three hundred fifty thousand dollars ($350,000) in punitive damages.

The Amended Complaint for the Wrongful Death Action names Samuel A. Buttari, Sr., and McCann as the co-administrators of Ryan's estate.  The factual allegations largely track the allegations noted above for the Personal Injury Action.  Naturally, however, the prayer for relief differs.  Specifically, in Count I, the Amended Complaint seeks fifteen million dollars ($15,000,000) in compensatory damages on behalf of Ryan's statutory beneficiaries.  In Count II, the Amended Complaint demands three hundred fifty thousand dollars ($350,000) in punitive damages, alleging that Everette's conduct constituted willful and wanton and/or gross negligence.

### C.   Motions to Dismiss

In response to Plaintiff's Complaint, on February 25, 2021, 88 Freight filed its Motion to Dismiss (ECF No. 20), moving to dismiss Plaintiffs' Amended Complaint for failure to state a claim.  In support of its Motion, 88 Freight argues that it does not constitute a proper party to this lawsuit.  (88 Freight's Mem. in Supp. of Mot. to Dismiss ("88 Freight's Mem.") (ECF No. 21) at 1-2, 4-6.)  Specifically, 88 Freight maintains that an agency relationship never existed between it and the Carrier Defendants.  (88 Freight's Mem. at 1-2, 4-6.)  Rather, 88 Freight submits that the Carrier Defendants entered into a brokerage agreement with a third-party, Halal Freight, LLC ("Halal Freight").  (88 Freight's Mem. at 5.)  88 Freight contends that the documents Plaintiffs

4

relied on in framing their Amended Complaint — to include a New Carrier Setup and a Rate and Load Confirmation — prove as much, but that Plaintiffs intentionally omitted the documents given that they belie the existence of any relationship between 88 Freight and the Carrier Defendants. (88 Freight's Mem. at 2.) In essence, 88 Freight asks the Court to examine the New Carrier Setup and the Rate and Load Confirmation (which 88 Freight attached to its Motion to Dismiss), and conclude that 88 Freight simply had no relationship with the Carrier Defendants. (88 Freight's Mem. at 1-2, 4-6.)

Alternatively, 88 Freight argues that even if the Court concludes that 88 Freight proves a proper defendant here, the Amended Complaint fails to establish its liability. (88 Freight's Mem. at 6-10.) On that front, 88 Freight maintains that the Carrier Defendants operated as independent contractors and that it did not exercise the requisite degree of control over their activities to give rise to respondeat superior liability. (88 Freight's Mem. at 6-10.)

Finally, and again assuming that the Court finds 88 Freight a proper defendant, 88 Freight moves to dismiss Count II of the Amended Complaint. (88 Freight's Mem. at 10-13.) 88 Freight observes that, under Virginia law, a plaintiff may recover punitive damages when the injury sustained resulted from a defendant's willful and wanton negligence. (88 Freight's Mem. at 11.) And, to establish willful and wanton negligence, 88 Freight points out that Virginia courts require a showing of egregious conduct that evinces a conscious disregard of another person's rights. (88 Freight's Mem. at 11.) 88 Freight posits that Plaintiffs' allegations as to willful and wanton negligence — which essentially constitute the failure to heed two digital overhead signs — fail to meet that standard. (88 Freight's Mem. at 13.) On these same grounds, the Carrier Defendants also filed a Motion to Dismiss Count II of the Amended Complaint (ECF No. 15), raising substantially the same arguments that 88 Freight raised in its motion. (Mem. in Supp. of

5

Mot. to Dismiss Count II of Plaintiff's Am. Compl. of Defendants Michael Everette and M and C Transfer, LLC ("Carrier Defs.' Mem.") (ECF No. 16).)

Plaintiffs filed their Memorandum in Opposition to 88 Freight's Motion to Dismiss on March 9, 2021 (Pls.' Mem. in Opp'n to 88 Freight's Mot. to Dismiss ("Pls.' 88 Freight Resp.") (ECF No. 27)), and Defendant filed its Reply on March 15, 2021, (Def.'s Reply in Supp. of Mot. to Dismiss) ("88 Freight's Reply") (ECF No. 28)), rendering 88 Freight's Motion ripe for review.

Likewise, Plaintiffs filed their Memorandum in Opposition to the Carrier Defendants' Motion to Dismiss on March 1, 2021 (Pls.' Mem. in Opp'n to Carrier Defs.' Mot. to Dismiss ("Pls.' Carrier Def. Resp") (ECF No. 24)), and the Carrier Defendants filed their Reply on March 7, 2021 (Reply in Supp. of Mot. to Dismiss Count II of Plaintiff's Am. Compl. of Defendants Michael Everette and M and C Transfer, LLC ("Carrier Defs.' Reply") (ECF No. 26)), rendering the Carrier Defendants' Motion ripe for review.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III.   ANALYSIS

**A.   The Court May Consider The New Carrier Setup And The Rate And Load Confirmation, But A Factual Dispute Remains As To Whether 88 Freight Maintained An Agency Relationship With The Carrier Defendants**

   *1.   The Exhibits attached to 88 Freight's Motion to Dismiss do not warrant dismissal of 88 Freight at this stage of the litigation.*

The parties have a threshold dispute over the extent to which the Court may consider certain documents that 88 Freight attached to its Motion to Dismiss. Specifically, 88 Freight attached a New Carrier Setup (and accompanying e-mail) and a Rate and Load Confirmation that purportedly show that the Carrier Defendants never entered into a relationship with 88 Freight. (88 Freight's Mem., Ex. 1 ("New Carrier Setup") (ECF No. 21-1); Ex. 2 ("Rate and Load Confirmation") (ECF No. 21-2).) 88 Freight maintains that these documents reveal that a third-

7

party, Halal Freight, represents the proper party to this lawsuit.  (88 Freight's Mem. at 4-6.)  88 Freight submits that the Court may examine these documents, notwithstanding their absence from the Amended Complaint, because Plaintiffs relied on these documents in "framing the complaint."  (88 Freight's Mem. at 4.)

Plaintiffs respond by arguing that the Court should not consider the documents at all, because Plaintiffs did not append them to the Amended Complaint, explicitly rely on them or incorporate them by reference.  (Pls.' 88 Freight Resp. at 5-7.)  Plaintiffs maintain that, to the extent that they relied on these documents in framing their complaint, such reliance remained cabined to mere "limited quotation."  (Pls.' 88 Freight Resp. at 6-7.)  In any event, Plaintiffs argue that, even if the Court does consider the documents, the documents raise factual questions improperly resolved on a motion to dismiss.  (Pls.' 88 Freight Resp. at 7-10.)  The Court holds that it may consider the New Carrier Setup and Rate and Load Confirmation, but nonetheless agrees with Plaintiffs that too many factual questions remain respecting 88 Freight's relationship with the Carrier Defendants.

Generally, when deciding a Rule 12(b)(6) motion, the Court may only consider the allegations contained within the complaint.  *Phillips*, 190 F.3d at 618.  However, the Court may also consider attachments to a defendant's motion to dismiss when the attachments "w[ere] integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge [their] authenticity."  *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips*, 190 F.3d at 618).  Whether a document proves "integral" to a complaint depends on the extent to which the claims in the complaint "turn on" or are "otherwise based on the statements contained in the [document]."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)) ("Limited quotation

8

from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Am. Chiropractic*, 367 F.3d at 234 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In *Goines*, the Fourth Circuit suggested that a police incident report did not qualify as integral to the plaintiff's complaint when the plaintiff only relied on the incident report to supply background details about an event that the plaintiff otherwise experienced first-hand. *Goines*, 822 F.3d at 163-64, 166.

Here, Plaintiffs do not challenge the authenticity of the documents, but instead appear to argue that the documents do not play an integral role in the Amended Complaint's allegations. (Pls.' 88 Freight Resp. at 5-7.) In response, 88 Freight notes that Plaintiffs explicitly rely on the documents in setting forth their allegations of agency. (88 Freight's Reply at 4.) Indeed, as 88 Freight observes, the Amended Complaint has "no allegations of agency against 88 Freight *outside* of the documents." (88 Freight's Reply at 4.) The Court agrees with 88 Freight.

A comparison between the relevant allegations of the Amended Complaint, the New Carrier Setup and the Rate and Load Confirmation reveals that Plaintiffs depend entirely on these documents in setting forth their allegations that 88 Freight maintained an agency relationship with the Carrier Defendants. To begin, the Amended Complaint alleges that on September 24, 2020, an employee of 88 Freight sent to the Carrier Defendants an email asking them to complete a New Carrier Setup. (Am. Compl. at 2, ¶ 4.) The Amended Complaint further alleges that the employee used an 88 Freight e-mail address that displayed a signature line reading "88

Freight, LLC." (Am. Compl. at 2, ¶ 5.) Those allegations reflect precisely the same information contained in the e-mail that 88 Freight included with the New Carrier Setup documents. (New Carrier Setup, at 2.)

Moreover, the Amended Complaint appears to quote from the Rate and Load Confirmation when setting forth its allegations that 88 Freight "controlled the means and methods" of the Carrier Defendants. (Am. Compl. at 3, ¶ 10.) As mentioned, the Amended Complaint alleges that 88 Freight required Everette to use specific chains and binders to secure a load, to take photographs of the load and send them to an 88 Freight e-mail address or phone number and that 88 Freight reserved the right to fine and/or withhold payment if Everette failed to properly secure the load or delivered the load late. (Am. Compl. at 3, ¶ 10.) The Rate and Load Confirmation contains all these same details. (Rate and Load Confirmation, at 2.)

Accordingly, because Plaintiffs appear to exclusively rely on these documents in setting forth their agency allegations, the Court holds that these documents prove integral to the Amended Complaint. Unlike the plaintiff in *Goines*, Plaintiffs here do not have an independent basis of knowledge supporting their claim for respondeat superior liability. Instead, at this stage of the litigation at least, their claims against 88 Freight wholly depend on the information contained in the New Carrier Setup (and its accompanying email) and the Rate and Load Confirmation. Moreover, because Plaintiffs apparently had access to these documents, the underlying rationale of the no-extrinsic-documents exception applies with particular force here.

Nonetheless, the Court cannot conclude, as a matter of law, that 88 Freight does not constitute a proper party to this lawsuit. Indeed, the documents refer to 88 Freight and Halal Freight almost interchangeably. For example, the employee who sent the New Carrier Setup e-

10

mail did so using the following e-mail address: 88freight@gmail.com.[2] (New Carrier Setup, at 2.) Additionally, that employee did in fact maintain a signature line that read "88 Freight, LLC." (New Carrier Setup, at 2.) Moreover, on a sheet entitled "Quickpay NO Fee," the New Carrier Setup directs that invoices "be turn[ed] into 88freight@gmail.com." (New Carrier Setup, at 4.) Conversely, the Rate Load and Confirmation provides that all invoices should be sent to: hfcarrierinvoice@gmail.com. (Rate Load and Confirmation, at 2.) Yet, that document displays an e-mail address of: 88freightdispatch@gmail.com. (Rate and Load Confirmation, at 1-2.) Hence, the Court cannot, on this record, disentangle the various references to either 88 Freight or Halal Freight and discern which company proves the appropriate party to this action. In short, the documents reveal that 88 Freight and Halal Freight likely share some kind of relationship and that the parties maintain a factual dispute as to the exact nature of that relationship. And, because the Court cannot resolve factual disputes on a motion to dismiss, the Court declines to conclusively determine, at this early stage of the litigation, which company actually entered into a relationship with the Carrier Defendants.

However, the Court advises the parties that it expects them to resolve this issue as expeditiously as possible. If discovery reveals that 88 Freight does not constitute a proper party to this lawsuit, the Court expects that Plaintiffs will immediately bring that fact to the Court's attention so that the appropriate party may be substituted as a defendant and the case may proceed accordingly.

---

[2]     88 Freight discounts the importance of the gmail address by arguing that any individual or entity can create a gmail username irrespective of their affiliation with an official domain name or website. (88 Freight's Mem. at 5, n.2.) However, at this stage of the litigation, the Court must construe all factual allegations in favor of Plaintiffs. Given as much, use of a gmail address that purports to belong to 88 Freight reasonably gives rise to the inference that the user is associated with 88 Freight.

2.      *Plaintiffs plausibly allege respondeat superior liability.*

88 Freight next contends that, even if it proves a proper party to this lawsuit, the

Amended Complaint nonetheless fails to adequately allege respondeat superior liability. (88

Freight's Mem. at 6-10.) In essence, 88 Freight argues that it operated as an independent

contractor. (88 Freight's Mem. at 6-10.) To that end, 88 Freight points to language in the

relevant agreement that defines the relationship as such, and otherwise argues that 88 Freight did

not exercise sufficient control over the Carrier Defendants to establish an employer-employee

relationship. (88 Freight's Mem. at 6-10.) 88 Freight maintains that any control it exercised

over the Carrier Defendants related only to the "ultimate purpose" of the contractual relationship

and that relevant caselaw commands a finding that such limited control does not generate

respondeat superior liability. (88 Freight's Mem. at 10.)

In contrast, Plaintiffs argue that the question of control "is a multivariate analysis which

can be proved by witness testimony, documents, correspondence, recordings, and other

evidence," and that, at this early stage of the proceedings, they have adequately pled a theory of

vicarious liability against 88 Freight. (Pls.' 88 Freight Resp. at 3-5.) Plaintiffs point to their

allegations that 88 Freight controlled the means and methods of how the Carrier Defendants

transported the load, to include: the use of specific chains and binders to secure the load; the

taking of photographs of the load and requiring Everette to send those photographs to 88 Freight

before commencing the trip; and, reserving the right to fine and/or withhold payment if Everette

failed to properly secure the load or deliver it on time. (Pls.' 88 Freight Resp. at 4-5.)

According to Plaintiffs, the Amended Complaint thus gives "88 Freight more than sufficient

notice in understanding the claim against it and clearly gives [88 Freight] sufficient facts to

enable it to file a responsive pleading." (Pls.' 88 Freight Resp. at 5.)

Under Virginia law, "the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees, i.e., its servants, but not for the negligent acts of an independent contractor."[3] *Sanchez v. Medicorp Health System*, 618 S.E.2d 331, 334 (Va. 2005). To determine whether an employer-employee relationship exists, the Court must assess four factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and, (4) power of control. *Hadeed v. Medic-24 Ltd.*, 377 S.E.2d 589, 594-95 (Va. 1989). However, "[t]he first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." *Id.* "It is immaterial whether the employer exercises this control; the test is whether the employer has the power to exercise such control." *McDonald v. Hampton Training Sch. for Nurses*, 486 S.E.2d 299, 300 (Va. 1997).

Here, relevant caselaw persuades the Court that Plaintiffs have adequately alleged facts showing that 88 Freight exercised sufficient control over the Carrier Defendants.[4] For example, in *Lester v. SMC Transp., LLC*, the plaintiff sustained injuries after crashing into a tractor trailer after one of the defendants negligently drove the tractor trailer in such a way as to block all lanes

---

[3]    A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 n.3 (4th Cir. 2019). In Virginia, the substantive law of the place of the wrong governs. *Frye v. Commonwealth*, 345 S.E.2d 267, 272-73 (Va. 1986). Accordingly, because the accident occurred in Virginia, Virginia law applies. Moreover, the parties urge the application of Virginia law. (Pls.' 88 Freight Resp. at 3; 88 Freight's Mem. at 6.)

[4]    The Court rejects Plaintiffs' argument that the "only requirement at the pleading stage is to provide a short and plain statement making it clear to a defendant that a vicarious liability/respondeat superior claim is being made against the defendant and the reasons therefore." (Pls.' 88 Freight Resp. at 4.) For that proposition, Plaintiffs' rely on pre-*Twombly/Iqbal* caselaw. *See, e.g., BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 687 (8th Cir. 2002) (holding that allegations of agency only need to be alleged with particularity in cases of fraud). Current pleading standards require complaints to aver factual allegations that "raise a right to relief above the speculative level," rendering the right plausible on its face. *Twombly*, 550 U.S. at 555-56; *see also Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 132-33 (3d Cir. 2017) (requiring factual allegations to support theory of respondeat superior liability).

of traffic on Interstate 81.  2016 WL 4595696, at *2 (W.D. Va. Sept. 2, 2016).  The court examined, in the context of a motion to dismiss, whether the defendant ("Roy") who had directed the tractor trailer had an employer-employee relationship with SMC, a company that owned one of the tractors involved in the accident.  *Id.*  The court found that the plaintiff had sufficiently alleged such a relationship, emphasizing that SMC:  (1) knew that Roy would drive the tractor and delivered it to him; (2)  instructed Roy on how to use the towing equipment; and, (3) benefitted from Roy's use of the tractor.  *Id.* at *4.

Conversely, in another tractor trailer accident case, the court in *Jones v. C.H. Robinson Worldwide, Inc.*, found that the plaintiff did not sufficiently allege an employer-employee relationship when the allegations proved only that the defendant, a carrier-broker, "had a right to control the ultimate result — the delivery of the load to its final destination."  558 F. Supp. 2d 630, 639 (E.D. Va. 2008) (quoting *Schramm v. Foster*, 341 F. Supp. 2d 536, 546 (D. Md. 2004)). The court observed that although the defendant arranged pickup dates and times and provided delivery addresses to the carrier, "all of these activities were directed toward the incidental details required to accomplish the ultimate purpose for which [the defendant] had been hired by its shippers."  *Id.*  Moreover, although the defendant could "bounce" a load, it only did so when transferring the load from one carrier who could not complete the delivery to another who could. *Id.* at 638-39.  As such, the defendant could not terminate a particular driver, and had no power over a driver's compensation.  *Id.* at 639.

Plaintiffs' allegations here nudge their theory of vicarious liability from the speculative to the plausible.  Unlike the plaintiff in *Jones*, Plaintiffs allege facts that plausibly demonstrate that 88 Freight exercised control over the Carrier Defendants' transit-related conduct.  For example, Plaintiffs allege that 88 Freight directed Everette to use specific means in securing the load and

14

that Everette had to take photographs of the load and send those photographs to 88 Freight before commencing the trip.  (Am. Compl. at 3, ¶ 10.)  Read favorably, these allegations suggest that 88 Freight controlled how Everette hauled the load and when he could begin the haul.  Additionally, Plaintiffs allege that 88 Freight retained some power over Everette's compensation.  Specifically, that 88 Freight could withhold payment and/or fine Everette if he failed to properly stack the load or if he delivered the load late.  (Am. Compl. at 3, ¶ 10.)  While these allegations may not suffice at summary judgment, Plaintiffs here have set forth enough facts to survive 88 Freight's Motion to Dismiss.[5]

Finally, the Court acknowledges 88 Freight's citation to the Brokerage Agreement and its language defining either Halal Freight or 88 Freight as an independent contractor.  (88 Freight's Mem. at 6.)  However, conclusory labels in a contract do not preclude an analysis of the parties' actual conduct.  *Thaxton v. Commonwealth*, 175 S.E.2d 264, 268 (1970); *see also Schramm,* 341 F. Supp. 2d at 543-44 (evaluating the parties' conduct in conjunction with the contractual language).  Accordingly, while the contract language may lend support to 88 Freight's position at a later phase of the litigation, it does not extinguish Plaintiffs' theory of vicarious liability here.

For these reasons, the Court DENIES 88 Freight's Motion to Dismiss to the extent that it seeks 88 Freight's dismissal from this lawsuit.

---

[5]     The persuasive value of the holding in *Jones* proves limited here, as the court issued that ruling in the context of a summary judgment opinion. *Jones*, 558 F. Supp. 2d at 633.  The *Jones* court thus had a developed factual record from which to analyze the relevant relationships.  And, as Virginia courts have recognized, determining whether a party represents an independent contractor or an employee typically involves a fact-sensitive analysis.  *See Hadeed*, 377 S.E.2d at 288 ("Generally, whether a person is a servant or an independent contractor is a question of fact for a properly instructed jury.").

**B.     The Amended Complaint Does Not Plausibly Allege A Claim For Willful And Wanton Negligence, But Does Plausibly Allege Gross Negligence.**

*1.     Rule 12(b)(6) provides an appropriate vehicle through which to challenge Plaintiffs' claims for willful and wanton negligence and gross negligence.*

Both 88 Freight and the Carrier Defendants challenge Count II of the Amended Complaint, which appears to state a claim for willful and wanton negligence as well as gross negligence (the "aggravated negligence claim"). (Am. Compl. at 4-5, ¶¶ 1-7.)  On this score, both 88 Freight and the Carrier Defendants argue that "the accident of which Plaintiff complains remains within the realm of an ordinary, rear-end motor vehicle accident." (88 Freight's Mem. at 10; Carrier Defs.' Mem. at 6-7.)  In this vein, they contend that the factual allegations supporting Plaintiffs' theory of aggravated negligence — which amount to Everette having ignored two digital overhead signs — fall well short of the heightened degree of culpability required under Virginia law. (88 Freight's Mem. at 10-13; Carrier Defs.' Mem. at 5-7.)

Plaintiffs respond by first arguing that the Court cannot consider a challenge to the aggravated negligence claim, because Rule 12(b)(6) does not allow the Court to dispose of requests for punitive damages. (Pls.' 88 Freight Resp. at 10-12; Pls.' Carrier Def. Resp. at 2-4.)  Specifically, Plaintiffs claim that Rule 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety. (Pls.' 88 Freight Resp. at 11.)  Alternatively, Plaintiffs claim that they have adequately pled an aggravated negligence claim. (Pls.' 88 Freight Resp. at 12-15; Pls.' Carrier Def. Resp. at 4-7.)  Along these lines, Plaintiffs argue that Everette "struck the [Plaintiffs'] host vehicle at full speed while the host vehicle and other traffic were stopped," and that Everette "willfully and wantonly ignored two digital overhead signs advising that there had been an earlier automobile crash, stopped

16

traffic, and lane blockages."[6]  (Pls.' Carrier Def. Resp. at 6.)  The Court disagrees with Plaintiffs on both fronts.

For one, Plaintiffs misconceive the nature of the challenge to the aggravated negligence claim.  Indeed, 88 Freight and the Carrier Defendants do not simply seek dismissal of the request for punitive damages, but instead argue that the Amended Complaint fails to plausibly allege *a claim* for willful and wanton negligence under Virginia law.  And, the cases on which Plaintiffs rely do not support the proposition that the Court cannot review an aggravated negligence claim.

For example, in *Meeks v. Emiabata*, the defendants sought dismissal of "plaintiffs' request for an award of punitive damages."  2015 WL 1636800, at *1 (W.D. Va. Apr. 13, 2015).  The complaint in that action contained two counts, Count I (a survival claim) and Count II (a wrongful death claim) and a prayer for relief that included a request for punitive damages.  Compl., *Meeks*, 2014 WL 4951944 (W.D. Va. Oct. 2, 2014).  In holding that the court could not dismiss the portion of the prayer for relief that requested punitive damages, the *Meeks* court held that a Rule 12(b)(6) motion "is not available to dismiss only a demand for relief."  2015 WL 1636800, at *3.

Likewise, this Court declined to dismiss a request for punitive damages in a case where the plaintiff asserted five causes of action and, separately, included a request for punitive damages in the prayer for relief.  *Williams v. AM Lapomarda*, 2020 WL 3643466, at *3 (E.D.

---

[6]      Plaintiffs assert a new factual allegation in developing their argument that Everette acted willfully and wantonly; namely, that Everette's CDL licensure provided him with prior knowledge that failing to drive safely while operating a tractor trailer could lead to catastrophic injury.  (Pls.' 88 Freight Resp. at 15; Pls.' Carrier Def. Resp. at 6.)  However, Plaintiffs did not include this allegation in their Amended Complaint.  Accordingly, the Court will not consider it.  *Goines*, 822 F.3d at 165 ("A motion to dismiss tests the sufficiency of a complaint, and [the Court's] evaluation is thus generally limited to a review of the allegations of the complaint itself.") (internal citation omitted).

Va. July 6, 2020).  There, the defendants argued that the Court should deny the plaintiff's request

for punitive damages, because the plaintiff generally failed to allege that the defendants willfully

or recklessly violated the plaintiff's rights.  *Id.*  Simply put, the defendants attacked the

plaintiff's prayer for relief, not a specific claim asserted in the complaint.  *Id.*  Like the *Meeks*

court, this Court declined to address the defendants' "general request to deny [the plaintiff's]

demand for punitive damages." *Id.* at *17.

      Unlike the defendants in those cases, 88 Freight and the Carrier Defendants seek

dismissal of an entire cause of action.  (88 Freight's Mem. at 10-13; Carrier Defs.' Mem. at 6-7.)

In truth, Plaintiffs argue that the Court should not review the aggravated negligence claim,

because dismissing it would have *the effect* of eliminating the availability of punitive damages.

But that consequence does not foreclose a Rule 12(b)(6) challenge to the plausibility of a specific

cause of action asserted in the Amended Complaint.  If it did, any cause of action that

conceivably permitted the recovery of punitive damages could not be challenged through a

motion to dismiss, lest dismissal close the door to punitive damages.  And, as the caselaw

demonstrates, courts have not hesitated to dismiss claims for aggravated negligence on a Rule

12(b)(6) motion.  *See, e.g.*, *Sams v. Armor Corr. Health Servs., Inc.*, 2020 WL 5835310, at *30-

35 (E.D. Va. Sept. 30, 2020) (dismissing claim for gross negligence under Virginia law).

      Accordingly, Rule 12(b)(6) provides an appropriate procedural vehicle through which to

challenge the aggravated negligence claim.

     2.     *The Amended Complaint fails to plausibly allege a claim for willful and wanton*
            *negligence, but does plausibly allege gross negligence.*

      In essence, the Amended Complaint rests its aggravated negligence claim on one fact —

i.e., that Everette failed to heed two digital overhead signs that warned of stopped traffic ahead.

(Am. Compl. at 4-5, ¶¶ 3-6.)  According to Plaintiffs, those signs were located approximately 10

miles and 4-5 miles, respectively, before the crash site.  (Am. Compl. at 4, ¶¶ 3-4.)  And, because

Everette "crashed" into Plaintiffs' vehicle "at full speed," Plaintiffs' allege that he acted with

willful and wanton as well as gross negligence.  (Am. Compl. at 5, ¶ 6.)  However, these

allegations do not plausibly state a claim for willful and wanton negligence under Virginia law.

Virginia recognizes three degrees of civil negligence:  (1) simple negligence; (2) gross

negligence; and, (3) willful or wanton negligence.  *Cowan v. Hospice Support Care, Inc.*, 603

S.E.2d 916, 918 (Va. 2004).  Each degree of negligence requires a showing of increasingly

severe culpability:

> Simple negligence is the failure to use the degree of care an ordinary person
> would exercise to avoid injury to another.  The second level of negligence, gross
> negligence, is action which shows indifference to others, disregarding prudence to
> the level that the safety of others is completely neglected.  Gross negligence is
> negligence which shocks fair-minded people, but is less than willful recklessness.
> Willful and wanton negligence, the third level, is acting consciously in disregard
> of another person's rights or acting with reckless indifference to the consequences,
> with the defendant aware, from his knowledge of existing circumstances and
> conditions, that his conduct probably would cause injury to another.

*Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003) (citing *Harris v. Harman*, 486 S.E.2d

99, 101 (Va. 1997)).  A plaintiff may recover punitive damages only when the plaintiff

demonstrates willful and wanton negligence.  *Woods v. Mendez*, 574 S.E.2d 263, 265

(Va. 2003).

The Supreme Court of Virginia has repeatedly analyzed claims for willful and

wanton negligence in the context of traffic accidents.  *See, e.g.*, *Harris*, 486 S.E.2d at 99

(finding that allegations did not support claim for willful and wanton negligence where

the defendant, while speeding, intentionally tailgated the driver until the driver drove off

a curve in the road); *Webb v. Rivers*, 507 S.E.2d 360 (Va. 1998) (finding that allegations

did support claim for willful and wanton negligence where the defendant had a BAC in

19

excess of 0.21%, traveled 90 MPH in a 25 MPH zone and ran a red light); *Puent v. Dickens*, 427 S.E.2d 340 (Va. 1993) (finding allegations insufficient to support claim for willful and wanton negligence where the defendant had a 0.24% BAC, exceeded the speed limit and attempted to flee the scene of the accident).

In *Harris*, the court distilled its holdings on the willful and wanton negligence standard:

> [W]illful and wanton negligence generally involves some type of egregious conduct — conduct going beyond that which shocks fair-minded people. Such conduct has ranged from a driver with a significantly high blood alcohol content involved in an accident after a prior collision with another car, exceeding the speed limit, driving in the wrong lane, and leaving the scene of the accident, to a driver intentionally chasing and running into a bicyclist in a dispute over money, but has not included the actions of a drunk driver who was speeding, took no evasive action to avoid a rear-end collision, and tried to leave the scene of the accident.

*Harris*, 486 S.E.2d at 102 (internal citations omitted). The court specifically cautioned that intentional moving violations, by themselves, do not constitute willful and wanton negligence, because "[e]very time a driver intentionally violates a traffic law, by definition, the violator is on notice that other users of the road may be injured." *Id.*

Additionally, the Virginia Supreme Court has analyzed the requirements of gross negligence in this same context.[7] For example, in *Laster v. Tatum*, the court concluded that a defendant did not evince gross negligence when he arguably traveled too fast, struck a tree on the side of a private road and injured the passenger-plaintiff. 146 S.E.2d 231, 233 (Va. 1966). The court reasoned that the defendant's excessive speed did not constitute gross negligence, in part

---

[7] The parties did not provide any analysis specific to the issue of gross negligence. Nonetheless, because Count II of the Amended Complaint raises claims for both gross negligence and willful and wanton negligence, and because all Defendants appear to move for the dismissal of Count II in its entirety, the Court must address it.

20

because "there was no evidence of any posted sign, nor was there any testimony, that indicated what might be deemed a reasonable speed." *Id.* Accordingly, "the evidence afforded no basis for determining that to travel at [that] speed, at [that] time and place, amounted to complete neglect of the safety of the plaintiff-guest." *Id.*

Here, Plaintiffs have alleged an intentional traffic violation — namely, Everette's failure to decrease his speed despite warnings of slowed traffic. They have not alleged any additional facts showing that Everette consciously disregarded Plaintiffs' safety. For example, Plaintiffs have not alleged that Everette drove under the influence, that he exceeded the speed limit, that he suffered from fatigue or drowsiness or that he drove in the wrong lane. Indeed, the allegations here do not even approach the allegations in *Puent*, where the court found insufficient grounds for willful and wanton negligence despite the fact that the defendant drove drunk, exceeded the speed limit, took no evasive action to avoid a rear-end collision and thereafter attempted to flee the accident scene. 427 S.E.2d at 342. Although Plaintiffs rely on the overhead digital signs, those signs were located miles before the crash site. Everette's failure to decrease his speed upon observing a digital sign four miles before he rear-ended Plaintiffs' vehicle does not evince conduct which consciously disregards the rights of others.

However, Plaintiffs have plausibly alleged a claim for gross negligence. Unlike the defendant in *Laster*, Everette had notice that traffic had slowed. Given as much, Plaintiffs' allegations here do provide a plausible basis for determining that Everette's decision to travel at full speed, under the circumstances of this case, amounted to complete neglect of the safety of others. That Everette's failure to slow down constituted gross negligence proves more plausible in light of the fact that he operated an especially dangerous vehicle — a tractor trailer — at the time of the accident.

21

For these reasons, the Court dismisses without prejudice Count II of the Amended Complaint to the extent that it states a claim for willful and wanton negligence.

### IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART the Carrier Defendants' Motion (ECF No. 15) and GRANTS IN PART and DENIES IN PART 88 Freight's Motion (ECF No. 20).  The Court grants the Motions to the extent that they seek dismissal of any claims for willful and wanton negligence, but denies 88 Freight's Motion to the extent that it seeks 88 Freight's dismissal from this lawsuit.  Additionally, the Court denies the Motions to the extent that they seek dismissal of claims for gross negligence.  Accordingly, the Court hereby DISMISSES WITHOUT PREJUDICE Count II of Plaintiffs' Amended Complaint (ECF No. 9) to the extent that it states a claim for willful and wanton negligence.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  May 14, 2021